# GEORGE ROUKOVINA v. ISLAND FARM CREAMERY COMPANY.[1]

October 17, 1924.

No. 24,115.

**Finding that defendant maintained nuisance.**

1. The court found that the loading by defendant of milk wagons at a platform at the rear of its building between the hours of 3 and 4 o'clock a. m. and the running of an ice-crusher unmuffled during sleeping hours produced noises of such volume and character as to constitute a nuisance to plaintiff owning and occupying adjacent property as a home.

**Inference from absence of finding.**

2. In the absence of a finding that plaintiff and his family are supersensitive to distracting noises, it is to be assumed that they are persons of ordinary sensibilities.

**Noises during sleeping hours.**

3. Noises alone may be of such character and volume as to constitute a nuisance abatable during the usual hours of sleep, even though even greater and more distracting noises during other hours of the day may not be such.

**Restrictions to be placed on lawful business.**

4. A lawful business should not be destroyed or unreasonably hampered except to the extent imperatively necessary for the reasonable protection of another's proper enjoyment of life or property.

**Abatement of noises.**

5. The findings authorize the abatement of the noises found to constitute a nuisance, but the conclusions of law went too far in directing a judgment which enjoined matters not found to be abatable disturbances.

**Damages.**

6. The findings as to damages support the judgment awarding the same.

[1]Reported in 200 N. W. 350.

Action in the district court for St. Louis county to recover $2,940 and for an injunction abating a nuisance. The case was tried before Freeman, J., who made findings and ordered judgment in favor of plaintiff. From the judgment entered pursuant to the order for judgment, defendant appealed. Reversed with directions.

*Gannon & Strizich,* for appellant.

*Victor L. Power* and *Philip M. Stone,* for respondent.

HOLT, J.

The appeal is from a judgment perpetually enjoining defendant between the hours of 11 p. m. and 6 a. m., daily, from operating an ice-crusher and from loading its milk wagons at the rear end of its place of business.

The evidence is not here, and the errors assigned must be confined, as they are, to the proposition that the findings of fact do not support the judgment.

The substance of the findings material to a disposition of the case are: For several years prior to this suit, defendant had been in the milk, cream, dairy and ice-cream business in a two-story building fronting Third avenue, in Hibbing, and extending to the public alley in the rear. It has invested about $40,000 in its plant and serves some 500 customers. Plaintiff's building, the lower story occupied by himself and family as his home and the upper for roomers, is located across the alley mentioned. The side thereof on which are the bed-rooms extends alongside the alley to Mahoning street from a point nearly opposite the loading platform at the rear of defendant's plant. It is in a strictly residence district, but was acquired by plaintiff long after defendant had established its business. Third avenue is a business street, but without manufacturing establishments. The ordinary trolley cars pass over this street within 182 feet of plaintiff's building, but do not run between 1:30 a. m. and 6 a. m. Every morning between 3 and 4 o'clock defendant drives through the alley to its rear platform and loads 2 milk delivery wagons with cases holding milk and cream bottles, the cases being handed out through a window onto the platform and then onto the wagons, taking some 15 to 25 minutes for each of the

two loads. In doing this work the drivers and the loaders, on nearly every morning, engage in loud talking and on occasions are loudly profane in managing the teams. In moving and loading the cases, they would be dumped upon the platform and onto the wagons, making a great noise with the rattling and clinking of the bottles. Nearly every night, between May 1 and October 1, of each year, defendant manufactured ice-cream; and then, during the hours ordinarily devoted to sleep, uses an ice-crusher, which in operation is very noisy. The noises from the loading of the wagons and the operation of the crusher are "of such a volume and character as to awaken and keep awakened the plaintiff and the members of his family during such night hours when in the ordinary course they would be asleep, and that each such class of noises have been injurious to the health of the plaintiff and the members of his family, and offensive to their senses and have materially interfered with their comfortable enjoyment of life and of their said property."

The noises mentioned have damaged plaintiff and his family in health and comfort in the sum of $95 and diminished the value of the use of the premises as a home and rooming-house in the sum of $105, from October, 1920, to the commencement of the suit. The noises made in loading are only such as are incident to that sort of work, and the injury occasioned plaintiff therefrom can be prevented only by forbidding loading and running the ice-crusher unmuffled during the night hours. It is also found that, in the operation of defendant's plant and business, many other noises and annoyances to adjacent occupants occur at those hours and during the balance of the day, but not of a character seriously to affect plaintiff and his family. The conclusions of law direct judgment enjoining loading at the alley platform and the running of the crusher unless muffled during the hours from 11 p. m. to 6 a. m. and for $200 and costs.

It is argued that even though the finding is that the noises from the early morning loading and from the night operation of the crusher constitute a nuisance within the definition of section 8085, G. S. 1913, in that the same interfere with the comfortable enjoyment of life and property by plaintiff, the judgment is not justified

because there is no finding that plaintiff and his family are persons of ordinary sensibilities. The point is not sustained. In the absence of a finding upon the subject, it is to be assumed that they are of the normal type, not supersensitive to noises which do not unreasonably interfere with the hours of sleep and rest of the ordinary person.

The contention is also that, since defendant is conducting a lawful and useful business no more noisily than is ordinarily incident to its proper conduct, and at such period of the night as is absolutely necessary in that business, no injunction should issue, especially since plaintiff acquired his building long after defendant was established there. The contentions urged are all to be considered in determining the existence of an abatable nuisance. But none of them are determinative against granting relief. It is true that the character of the business sought to be interfered with, its extensiveness, its usefulness to the public, the noises, odors and disturbances necessarily attending its conduct, the condition and use of the surrounding property, the relative hardship as between the parties to the litigation, and who was first upon the ground are to be given due weight by the chancellor. But still, where it is found that a nuisance within the definition of the cited statute exists and seriously interferes with another's enjoyment of life and property it should be abated, especially so where, as here, the superior rights of habitation over business or trade rights invoke relief. For a full exposition of our position on the question, reference need only be made to Brede v. Minnesota Crushed Stone Co. 143 Minn. 374, 173 N. W. 805.

We think the fact that, for more than half an hour between the unseasonable hours of 3 and 4 o'clock in the morning, plaintiff and his family are awakened and kept awakened by the distracting noises from the loading of the wagons, and for a longer period during the night by the ice-crusher, is an interference with the right of habitation warranting the court in abating the same. Noises alone may be of such character and volume as to constitute a private nuisance when occurring during the hours usually devoted to sleep, even though the same or more distracting ones

would not be so held at other times.  Harris v. Randolph Lumber
Co. 175 Ala. 148, 57 South. 453; Stevens v. Rockport Granite Co.
216 Mass. 486, 104 N. E. 371, with note in Ann. Cas. 1915B, 1060;
Reilley v. Curley, 75 N. J. Eq. 57, 71 Atl. 700, 138 Am. St. 510;
Kroecker v. Camden Coke Co. 82 N. J. Eq. 373, 88 Atl. 955;
Blomen v. N. Barstow Co. 35 R. I. 198, 85 Atl. 924, 44 L. R. A.
(N. S.) 236; 20 R. C. L. § 60, p. 445.  The cases of Mitchell v.
Flynn Dairy Co. 172 Iowa, 582, 151 N. W. 434, 154 N. W. 878; and
Kobielski v. Belle Isle East Side Creamery Co. 222 Mich. 656, 193
N. W. 214, 31 L. R. A. 183, gave relief against a nuisance of the
same sort as here involved, caused by the operation of milk and
cream distributing plants.  The only difference is defendants' busi-
ness in the Iowa and Michigan cases was more extensive and the
nuisance produced correspondingly aggravated.

However, as communities become more compact and various
trades and industries rub elbows with habitations, some noises and
other annoyances must be endured by the owners and occupants
of the latter.  A lawful business should not be destroyed or un-
reasonably hampered except to the extent found imperatively ne-
cessary to a reasonable protection of another's proper enjoyment
of life or property.  If such cases, cited by defendant, as Gilbert
v. Showerman, 23 Mich. 448; McGill v. Pintsch Compressing Co.
140 Iowa, 429, 118 N. W. 786, 20 L. R. A. (N. S.) 466; Meeks v.
Wood, 66 Ind. App. 594, 118 N. E. 591; Le Blanc v. Orleans Ice
Mnfg. Co. 121 La. 249, 46 South. 226, 17 L. R. A. (N. S.) 287; Shim-
berg v. Risdon Cream Co. 215 Mich. 94, 183 N. W. 780; Peck v.
Newburgh Light, H. & P. Co. 132 App. Div. 82, 116 N. Y. Supp.
433; Booth v. Rome W. & O. T. Ry. Co. 140 N. Y. 267, 35 N. E. 592,
24 L. R. A. 105, 37 Am. St. 552; Crawford v. Central Steam Laundry,
78 Wash. 355, 139 Pac. 56; Cunningham v. Miller, 178 Wis. 22, 189
N. W. 531, 23 A. L. R. 739, are to be construed as favoring trade
or business to a greater extent than as above stated and as formulat-
ed in the Brede case, supra, which is doubted, we cannot follow.

Hence, insofar as the judgment forbids the operation of the
crusher unmuffled between the hours named we think it right.  The
crusher is in a building and it is to be assumed that its operation

may be so walled in that no excessively disturbing noise therefrom will penetrate plaintiff's building during the usual hours of sleep. The findings also support the judgment insofar as it prohibits the loading of the wagons from the open rear platform next to the alley. This cannot be said to unreasonably interfere with defendant's business. It is not conceivable that it is impossible to so arrange matters that the loading may be done within the building or from the front thereof on Third avenue. But we do think the injunction goes too far in forbidding the driving of vehicles along the alley.

There is no occasion for excluding defendant from the ordinary use made by the public of the alley. A milk wagon, truck or automobile may travel over a public alley or street at any hour, night or day, at least in the absence of municipal regulation, and from such use defendant should not be debarred. The only noises found to constitute a private nuisance were those proceeding from loading the milk delivery wagons at the rear platform, and the running of the ice crusher unmuffled, and those alone might be enjoined. Hence, from the conclusions of law should also be eliminated the paragraph numbered 3 and the judgment modified accordingly. That paragraph reads: "That from and after the date of entry of judgment herein the defendant and all its officers and servants and all persons acting for or under them be perpetually enjoined and restrained from using the alley and platform at the rear of defendant's place of business in such a manner as to make any noise that could come to the ears of plaintiff and his family and interfere with their comfortable enjoyment of life and property at their said present residence."

We see no reason why the findings do not sustain the money judgment for damages. The case of Millett v. Minnesota Crushed Stone Co. 145 Minn. 475, 177 N. W. 641, 179 N. W. 682, justifies a recovery for both the items included therein.

The judgment is reversed with direction to modify the conclusions of law and enter a judgment as herein indicated.